## Lucius Day v. W. W. Adams.

*Deed.　Grant.　Description.　Witnesses.　Statute, ( Gen. Sts., ch. 65, § 4.)　Homestead.*

It is not necessary to the validity of a grant that every part of the description of the subject matter should be literally true.

Where the language of a grant was "the right to take and use sufficient water, from any and all the springs on the grammar-school lot, to fill a two inch pipe," etc., and in another part of the deed the water is spoken of as a stream leading from said springs, it was *held* that as there was sufficient water to answer the requirement of the grant and the same was being enjoyed to the full extent granted, it was not necessary that it should be shown that the stream of water has its rise from what in strictness is denominated a spring, in order to constitute a breach of covenant, contained in an absolute deed of the premises.

But under our statute, two subscribing witnesses are necessary to the validity of a deed. Therefore, it was *held* that, as the deed containing said grant had but one witness, it created no legal incumbrance on the premises.

In a court of equity the execution of such deed is treated as evidence of an agreement to execute a valid deed, but not conclusive. A court of law cannot treat such deed as valid, on the assumption that a court of equity would enforce it on application for that purpose.

The premises in question were sold to the plaintiff by the administrator of one Norris, two years after said Norris' death, on petition of his widow and minor children, who had occupied them until sold. The deed containing said grant was signed by said Norris, but not by his wife, the premises being their homestead, not exceeding $500 in value. *Held* that the premises vested absolutely, under the homestead act, in the widow and children at the decease of Norris, unincumbered by the deed containing said grant.

THIS was an action of covenant broken. Plea that the defendant had not broken his covenants, or either of them, but has kept the same. Trial by court, December term, 1865, Orleans county, WILSON, J. presiding.

The plaintiff presented, in evidence, a deed from the defendant, as administrator on the estate of Amos T. Norris, to the plaintiff, dated March 13, 1862. Also a quit-claim deed from Amos T. Norris and Amos T. Norris, Jr., to Phineas Page, dated January 20, 1858. The last named deed has but one witness, and for that reason the defendant objected to it, and the court admitted the deed, subject to said objection. Said Page conveyed the same premises to Newport Water Company.

The court find that the Newport Water Company under said deed take water from a stream of water on said premises in a 2½ inch pipe and convey it by said pipe to the Lake Bridge village in said Newport. No witness testified that there was any spring on said granted premises, but all that were introduced on either side denied any knowledge of any spring on said premises. The stream from which said company take their water is made from a swamp, a part of which swamp is on these premises and a part on another lot of land adjoining, which now is, and was at the time of the deed from Amos T. and Amos T., Jr., to said Page, owned by one Ira Fish. It did not appear whether the water which made this swamp had its rise from the grammar-school lot or from said lot of land owned by said Fish. And the court were unable to find, from any evidence in the case, that the water in said swamp, any of it, rises on said granted premises, or that there is any spring on said last named premises. Amos T. Norris, Jr., never had any title or interest in said grammar school lot, but at the time of said deed to said Page Amos T. Norris had a lease of the same from the grammar-school ( viz : The Derby Academy ) and resided on the same with his family, consisting of a wife and minor children, occupying the same as a homestead, and the said premises were the homestead of the said Amos T. Norris and his family from a period before the date of said deed to Page, continuously up to the time of the death of said Amos T. Norris, which was in 1860. The said Amos T. Norris' widow is now living, and she with her children remained

on said premises, occupying the same as their homestead, and the same was their homestead continuously up to the date of the deed from said Adams to said Day. The wife of said Amos T. Norris did not sign said deed to said Page, and said premises were not at that time worth over $400, nor were they at any time thereafter worth over $500. It was admitted, on trial, that the probate court licensed said Adams, as administrator, to sell said premises, among other reasons on the petition of said Amos T. Norris' widow and minor children, and that they (the widow and children) had the greater part of the avails arising from said sale to said plaintiff. The premises were sold by defendant to plaintiff for $500. The plaintiff claimed on trial no breach of the defendant's covenant, except that there was a breach in consequence of the deed to said Page. After the deed to said Page, and before the decease of the said Amos T. Norris, he, the said Amos T. Norris, took a new lease from said grammar school of said lot.

Upon the foregoing facts the court *pro forma* rendered judgment for the plaintiff for the sum of $15 damages and costs, to which the defendant excepted. The description in the deed of Amos T. Norris and Amos T. Norris, Jr., to Page, was as follows:

"The said Page is to have the right to take and use sufficient water, from any or all the springs on the grammar-school lot, in the second division, being on the same lot now occupied by the said Amos T. and Amos T., Jr., to fill a two inch pipe, or less, at the option of said Page, with the right of way to the said spring or springs, and the right of digging on and across said land for the purpose of laying necessary pipes and fixtures. Also the right to erect and build a sufficient and necessary reservoir on said lot, said reservoir to be built and erected on either side of the stream leading from said springs, within two rods of said stream."

The breach alleged is set forth in the opinion of the court. Said leases were not among the papers furnished the reporter.

*Edwards & Dickerman*, for the defendant.

*George N. Dale* and *J. T. Allen*, for the plaintiff.

The opinion of the court was delivered by

PECK, J.   The covenant for the breach, of which the plaintiff seeks to recover, is contained in a deed of a parcel of land called the grammar-school lot, from the defendant as administrator of Amos T. Norris to the plaintiff, dated March 13, 1862.   The covenant counted upon is that the defendant would warrant and defend the premises against all persons claiming the same by, from or under the said Amos T. Norris or the defendant.   The breach alleged is that the defendant has not warranted and defended the premises, "for that one Phineas Page had good and lawful right by virtue of a deed signed, sealed and acknowledged in due form of law from the said Amos T. Norris, and Amos T. Norris, Jr., dated the 20th day of January, A. D. 1858, to take and use sufficient water from any or all of the springs on said granted premises, to fill a two-inch pipe or less at the option of said Page, with the right of digging on and across said land for the purpose of laying necessary pipes and fixtures, and to erect and build a sufficient and necessary reservoir on said lot on either side of the stream leading from said spring, within ten rods of said stream." The declaration alleges an eviction by Page or his assigns under that deed ; and the case shows that the Newport Water Company, under a deed by Page to them, are taking water from a stream of water on the premises in a two and a half inch pipe, and conveying it to Lake Bridge village in Newport.   No question is made but this is such an exercise of the right, the deed of Norris to Page purports to convey, as constitutes a sufficient eviction if such right was granted by the deed to Page, and still existed in Page or his grantee at the date of the defendant's deed to the plaintiff.

It is insisted on the part of the defense that no right, interest or easement passed by the deed from Norris to Page for the reason, as it is claimed, that the springs mentioned in the grant have no existence.   The county court finds that the Newport Water Company take water from a stream of water *on said premises* in a two and a half inch pipe and thereby convey it to Lake Village ; that the stream from which the Company take the water is made from a swamp, a part of which is on these premises and a part on another lot adjoining, owned by one Ira Fish ; that it did not ap-

pear whether the water that made this swamp had its rise from these premises or from the land owned by Fish, and that the court were unable to find that the water in the swamp, any of it, rises on the premises in question, or that there is any spring on the premises. The object of the grant was to give the grantee the right to take water from that lot, to the extent specified,

The language of the grant does not import a grant of a spring, but is in terms a grant of " the *right to take and use sufficient water from any or all of the springs on the grammar-school lot, to fill a two inch pipe,*" etc. Although the water is spoken of as coming from springs on the lot, it is in another part of the deed spoken of as a stream leading from said springs. It is not necessary to the validity of a grant that every part of the description of the subject matter should be literally true, nor is it necessary in this case that it should be shown that the stream of water has its rise from what in strictness is denominated a spring. The water is there in sufficient abundance to answer the requirement of the grant ; the stream of water named in the grant is there ; the water is capable of being taken and used in the manner specified in the grant. It would be too narrow a construction to hold this grant void for the alleged reason that the subject matter of it has no existence ; more especially at the instance of the grantor or his assigns, while the grantee is enjoying, without complaint on his part, the full benefit of the grant. In construing grants the inclination should be in favor of a construction that will sustain, rather than that which will defeat the grant. The facts found by the court in relation to the source of the stream of water are not sufficient to render the deed inoperative, especially as the grantee is content with what he is enjoying under it.

It is also objected that the deed from Norris to Page is inoperative for the reason that it has but one attesting witness. Chapter 65 of section 4 of the General Statutes provides that " all deeds and other conveyances of lands, *or of any estate or interest therein,* shall be signed and sealed by the party granting the same, and *signed by two or more witnesses,* and acknowledged by the grantor," etc., and recorded at length in the clerk's office of the town in which such lands lie. The interest which this deed purports to convey

is such as comes within the provisions of this section. It is insisted however by the counsel for the plaintiff, that in the absence of any express provision that a deed with less than two witnesses shall be void, a non-compliance with this requirement of the statute does not invalidate a deed. This argument is sought to be supported by the fact that section 7 of the same chapter provides that conveyances shall not be effectual to hold lands against any other person but the grantor and his heirs, unless acknowledged and recorded, without any provision in the statute as to the effect of the omission of any other statutory requisite. But if one of the two witnesses may be dispensed with, both may, and on the same principle all the statutory requirements may be disregarded. In this same chapter there are provisions for proving the *due execution* of a deed of real estate when the grantor has died or departed from the state without having acknowledged his deed, or when a grantor refuses to acknowledge his deed, with a provision that the proof shall be certified upon the deed, and shall take the place and have the effect of an acknowledgment. Then follows section 18, which provides that "*no deed not having at least two subscribing witnesses shall be proved in the manner before provided.*" It is evident from this that it was intended that two subscribing witnesses should be necessary to the validity of a deed. This we understand has been the construction of the statute.

But it is urged that the deed is good in equity and would be enforced in a court of chancery; and that the existence of an equitable incumbrance is a sufficient breach to sustain this action. But it can not be affirmed that any equitable incumbrance was ever created by the deed, or that it is operative or would be enforced; especially after the death of the grantor, and after the title to the land has passed to a subsequent purchaser who may be a *bona fide* purchaser without notice. The recording of such defective deed is not constructive notice to subsequent purchasers. It is true that in a court of equity the execution of such a deed is treated as evidence of an agreement to execute a valid deed, but not conclusive. The relief that chancery affords in such case is in the nature of a decree for a specific performance, but it is not a matter of course that relief is granted. It depends on

too many contingencies for a court of law to treat the deed as valid upon the assumption that a court of equity would enforce it on application for that purpose. To do so would in effect be to hold the deed valid at law, and dispense with the aid of a court of equity in such cases.

But there is a further objection to the plaintiff's right of action. In order for the plaintiff to recover, it must appear that there is, or was at the date of the defendant's deed to the plaintiff, an existing incumbrance upon the premises created by the deed of Norris to Page. It appears that Amos T. Norris, Jr., who joined with Amos T. Norris in that deed, never had any interest in the premises. The fact that at the date of that deed the premises constituted the homestead of Amos T. Norris and his family, consisting of his wife and minor children, and was so occupied by them as such homestead from that time down to the death of Amos T. Norris, shows that at the decease of said Norris the premises vested absolutely in his widow and minor children, unencumbered by the deed of Page ; she not having signed the deed, and the premises never having exceeded in value $500. This results from the provisions of the homestead law, in force at the date of the deed, prohibiting the alienation of such homestead except by the joint deed of husband and wife, and providing that on the death of such housekeeper or head of the family, his homestead of the value of $500 shall wholly pass to his widow and children in due course of descent, without being subject to the payment of the debts of the deceased. The proposition of the plaintiff's counsel is, that the owner of a homestead, having a wife, may, while occupying it as such, convey it by his sole deed and thereby pass the title to the premises during his life, and that at his death and not before, the wife, if she survive him, may assert her right to it provided it has not been lost in the meantime by acquiring another homestead ; and that in this case the widow and minor children have not asserted; but on the contrary have waived their homestead right by petitioning the probate court for a sale of the premises. We are by no means prepared to assent to the proposition that the sole deed of the husband in such case would be effectual to disturb the occupancy of the husband and his family while they con-

tinued to occupy the premises as a homestead. But this is not material, as the widow and children took an absolute title at the decease of Norris, and have not waived their homestead right. The facts that the widow and minor children continued to occupy the premises from the death of Norris two years to the time of the sale to the plaintiff, that the sale was made on the petition of the widow and minor children, and that they had the greater part of the avails of the sale, show the assertion of their right, rather than an abandonment of it; and the defendant is protected from this action by their title. As there was no legal incumbrance existing upon the premises under the deed to Page at the date of the deed of the defendant to the plaintiff, the judgment of the county court is reversed, and judgment for the defendant.