In re Thomas Edward RYAN, Debtor.

Peter M. STERN, Appellant,

v.

CONTINENTAL ASSURANCE COMPANY, Appellee.

Civ. A. No. 87–0090–F.

United States District Court, D. Massachusetts.

Dec. 7, 1987.

Peter M. Stern, Trustee for Thomas Edward Ryan, Springfield, Mass., pro se.

Bradford W. Martin, Ryan & White, Springfield, Mass., for CNA Ins.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

### I. INTRODUCTION

■ Before this Court is an appeal from a final decision of the bankruptcy court pursuant to 28 U.S.C. § 158(a). The case concerns the application of a Vermont law which requires that any conveyance of an interest in land be signed by at least two witnesses. 27 Vt.Stat.Ann. § 341 (1985). The appellant is a trustee in bankruptcy who claims that a mortgage executed by the debtor is invalid because it was signed by only one witness. Thus, the trustee claims that the bank, to whom the mortgage was assigned, does not have an enforceable lien against the estate. The bankruptcy court found for the bank stating that the "two witness" rule was a technicality which the Vermont Supreme Court would not interpret so as to invalidate the mortgage. *In Re Ryan*, 70 B.R. 509 (Bankr.D.Mass.1987). After careful review of the law, this Court finds that the bankruptcy court erred as a matter of law and was clearly wrong in its interpretation of the Vermont statute. Therefore, the decision will be reversed.

### II. FACTS

The facts are undisputed. On November 11, 1975 Thomas E. Ryan ("Debtor") purchased a condominium unit located in Hartford, Vermont from Quechee Lakes Corporation (the "property"). He executed a mortgage deed the same day to Quechee Lakes Corporation (the "mortgage"). Contrary to the law of Vermont, the mortgage was attested to by only one witness instead of the requisite two. The mortgage was then recorded and on November 17, assigned by Quechee Lakes Corporation to Continental Assurance Corporation (the "bank"). The deed, mortgage and assignment of mortgage were all recorded in the town's records. Both the deed and mortgage assignment were properly attested to by two witnesses.

The debtor filed for bankruptcy some time in 1983 and Peter M. Stern ("trustee/plaintiff/appellant") was appointed as trustee for the debtor's estate. He decided to sell the property and initiated a title search which revealed that the mortgage held by the bank was improperly witnessed. On or about April 23, 1983 the trustee filed a complaint for authority to sell the property free of any lien since, he claimed, the mortgage was defective and did not create an enforceable lien. Rather than delay the sale, the trustee and the bank entered into a stipulation that resulted in the property's being sold and the bank's mortgage being paid while the trustee retained his right to be repaid by the bank if the Court invalidated the mortgage.

### III. DISCUSSION

■ A trustee in bankruptcy stands in a different relationship to the property than did the debtor. The Bankruptcy Code grants the trustee the rights of a bona fide purchaser. 11 U.S.C. § 544(a) (the "strong arm statute"). A bona fide purchaser is usually defined as one who must "acquire the legal title, without notice, and pay the full value." Kratovil & Werner, Modern Mortgage Law and Practice 568 (1981). The effect of this right is that the trustee "may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by ... a bona fide purchaser of real property." 11 U.S.C. § 544(a). Thus, if there is any flaw or defect in the chain of title or the documents of transfer which would not bind a bona fide purchaser, it will not bind the trustee.

The bankruptcy court's error was to dismiss the lack of two witnesses to the mortgage as de minimis. Having decided, wrongly, that the flaw did not invalidate the mortgage, the bankruptcy court went on to analyze the extent of the trustee's responsibility as a bona fide purchaser to be on notice that the property was encumbered. Since the mortgage was invalid, the

trustee's notice obligations are irrelevant to deciding the issue. Therefore, since this Court disagrees with the first step of the bankruptcy court's analysis, this Memorandum will not track the substance of that court's opinion.

## A. Vermont Law

■ The rights and powers of a bona fide purchaser of real property are determined by the law of the state where the property is located. 11 U.S.C. § 544(a). Therefore, the trustee's rights are based on Vermont law. Pursuant to Vermont law, "[d]eeds and other conveyances of lands, or of an estate or interest therein, shall be signed by the party granting the same and signed by two or more witnesses...." 27 Vt.Stat.Ann. § 341. The leading case interpreting this rule, then entitled chapter 65, § 4, is *Day v. Adams*, 42 Vt. 510 (1869). In *Day*, the administrator of an estate sold a parcel of land to a Mr. Day. Day then brought an action against the administrator for breach of covenant because he found that the deceased had deeded the land to a third party. The Vermont Supreme Court held, however, that the earlier deed was invalid because it was only signed by one witness rather than the requisite two. Therefore, the land was unencumbered when sold to Day.

In an opinion delivered by Justice Peck, the Vermont Supreme Court rejected a series of arguments similar to the ones presented by the bank to this Court. Quoting what was then chapter 65, § 4 of the Vermont General Statutes that "all deeds and other conveyances of lands, *or of any estate or interest therein,* shall be signed and sealed by the party granting the same, and *signed by two or more witnesses....*" Justice Peck wrote that "it is insisted however by the counsel for the plaintiff [Day], that in the absence of any express provision that a deed with less than two witnesses shall be void, a noncompliance with this requirement of the statute does not invalidate a deed." *Day,* 42 Vt. at 515 (emphasis in the original). He held this argument to be irrelevant stating that "[if] one of the two witnesses may be dispensed with, both may, and on the same principle, all statutory requirements may be disregarded." *Id.* Moreover, Justice Peck stated that "[i]n order for the plaintiff to recover, it must appear that there is, or was at the date of the defendant's deed to the plaintiff, an existing encumbrance upon the premises created by the deed...." 42 Vt. at 516. Since the mortgage was defective in that it was signed by only one witness, there was "no legal incumbrance existing upon the premises under the deed ... at the date of the deed of the defendant to the plaintiff." *Id.*

*Day* presents strong support for the trustee's argument that under Vermont law a conveyance of an interest in land is invalid if not signed by two witnesses. Even though the statute cited by the trustee is listed under a different number than the one interpreted by the Supreme Court in *Day,* the case is cited in the most recent annotation of the current Vermont statute. Moreover, the Vermont Supreme Court has never overruled *Day.*

Although the bank cites what, at first, might appear to be a contrary holding in *Morrill v. Morrill,* 53 Vt. 74 (1880), the Vermont Supreme Court in *Morrill* specifically avoided overruling *Day.* In *Morrill* a mortgage signed by only one witness was used for the purpose of serving as security against a bond. The Vermont Supreme Court, citing *Day,* found that although the document was a "good equitable mortgage" for that purpose, it "was defectively executed, and its record was not constructive notice to subsequent purchasers or attaching creditors." *Morrill,* 53 Vt. at 78.

Another case cited by the bank for the premise that the flaw in the mortgage does not invalidate it, *Tinsdale v. Bove,* 97 Vt. 465, 124 A. 585 (1924), is also inapposite because it does not alter the interpretation of the "two signature" law considered in *Day.* In *Tinsdale,* a purchaser was found to have notice of, and thus be bound by, a valid mortgage even though it was mentioned in two "fraudulent" deeds. The Vermont Supreme Court held that the deeds had no effect on the validity of the mortgage, they merely made known the presence of the mortgage. The bank's re-

liance on *Tinsdale* reflects its erroneous contention, supported by the bankruptcy court, that the issue here is the trustee's notice that a mortgage existed. The question before this Court, however, is whether the mortgage constituted a valid encumbrance on the property.

### B. The Precedential Value of Day v. Adams

While concluding that it had never been specifically overruled, the bankruptcy court rejected the holding of *Day* because it did not "believe that the Supreme Court of Vermont would be inclined to follow *Day v. Adams* today. [Because] the case was decided in an age when formal and technical compliance with the law was regarded as sacrosanct.... This reasoning represents neither compelling logic nor the attitude of courts today toward statutory requirements as to form." 70 B.R. at 512. This statement is a unique and erroneous interpretation of the role of precedent in judicial decision making. State supreme court decisions do not lose precedential value as they age. *Day* interprets a statutory provision whose substance has remained unchanged to the present. Barring a change of law or a Vermont Supreme Court case invalidating the "two witness" rule, *Day* reflects Vermont law regarding conveyances of interests in land.

The holding in *Day* is in no way outdated or antiquated. Curiously, the bankruptcy court acknowledged that "the approach in *Day* seems to represent a majority view [among the states]." 70 B.R. at 512. The bankruptcy court gave this no weight, however, going on to say that "when one scans property law authorities ... this 'majority' consists largely of turn-of-the-century cases in which courts slavishly observed rigorous technical requirements." *Id.* While, again, this Court rejects as completely erroneous the bankruptcy court's premise that cases lose their precedential value as they age, it also notes that the "two witness" rule is not a mere technical requirement nor is its invocation confined to "turn-of-the-century cases."

### C. Modern Applications of the Two–Witness Rule

In 1986 the United States Bankruptcy Court of the District of Vermont, a court expected to be familiar with Vermont law, cited *Day* for the proposition that an improperly witnessed deed was invalid. *In Re Gorman*, 68 B.R. 541, 543 n. 1. (Bankr. D.Vt.1986). In *Gorman*, debtors claimed their transfer of property to a partnership was invalid because the transferring deed was acknowledged by incompetent witnesses. Because the invalid deed was followed by two subsequent valid deeds executed by debtors, the bankruptcy court found that the transfers by the valid deeds were binding on the debtors. The court cited *Day* in support of its assumption that the earlier deeds acknowledged by incompetent witnesses "were fatally defective" even though the later, corrective, deeds created a valid transfer. 68 B.R. at 543.

In 1983, the United States Bankruptcy Court of the Southern District of Ohio held, pursuant to an Ohio statute, that the signing of a mortgage must be attested to by two witnesses; a mortgage not attested to by two witnesses was void as a mortgage lien. *In Re Hofacker*, 34 B.R. 604 (Bankr.D.Ohio 1983). The facts in *Hofacker* are similar to those now before this Court. The debtors executed a mortgage, in this case with the Farmers' Home Administration of the United States Department of Agriculture, attested to by only the signature of one witness. Section 5301.01 of the Ohio Revised Code states: "A ... mortgage ... must be signed by the grantor, mortgagor, vendor, or lessor, and such signing must be acknowledged by the grantor, mortgagor, vendor, or lessor in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation...." This language is essentially the same as Vermont's "two witness" law.

About seven years after executing the mortgage, the debtors filed a voluntary petition under Chapter 7 and the court-appointed trustee attempted to sell the property. The trustee discovered the error in the mortgage and filed a motion so that the

property could be sold unencumbered. The trustee stated that since the mortgage had not been properly executed pursuant to Ohio's "two witness" rule, it was defective on its face. 34 Bankr. at 605. The Farmers' Home Administration objected claiming, in essence, that the error was covered by an Ohio curative statute which gave effect to documents containing inadvertent errors. The bankruptcy court, however, found that an Ohio Supreme Court case specifically limited the use of the curative statute to technical defects. *Delfino v. Paul Davies Chevrolet, Inc.,* 2 Ohio St.2d 282, 31 Ohio Op.2d 557, 209 N.E.2d 194, 197 (1965). It did not relieve the parties "from complying with the mandatory requirements of ... [the code] having to do with the formal requirements in executing instruments relating to the transfer of real property." 34 Bankr. at 606. Thus, the bankruptcy court citing the bankruptcy "strong-arm rule" held that the since the mortgage did not conform to the "two witness" rule it was "binding only as between the parties and not as to the trustee in bankruptcy as a hypothetical lien creditor." *Id.*

Given these modern invocations of the "two witness" rule, this Court finds it impossible to conclude that the Vermont Supreme Court would not interpret the state's "two witness" rule so as to invalidate the mortgage. The Vermont Court is even more likely than the Ohio Supreme Court to uphold the "two witness rule" since Vermont has no curative law of the sort distinguished by the Ohio court. Rather, Vermont's curative law only validates defective instruments which have been on record for a period of 15 years. 27 Vt.Stat.Ann. § 348 (1987 supplement). The mortgage under review is less than 15 years old. In the absence of a curative law, this Court cannot infer one.

While the invalidation of a mortgage may seem a harsh result, it is required by both the Vermont attestation laws and the powers granted trustees by the strong-arm act. A critic of the strong-arm act wrote that giving trustees bona fide purchaser status is "an illustration of burning a barn to kill a mouse" and that "no doubt the

trustee will succeed in setting aside some perfectly sound and sensible security transactions." Kratovil & Werner, Modern Mortgage Law and Practice 569 (1981). Here, however, the transaction was not secure since its base was an invalid mortgage.

### IV. CONCLUSION

Accordingly, for the reasons set out above, this Court finds for trustee/appellant. The decision of the bankruptcy court is REVERSED.

It is So Ordered.