HON. JAMES BARRETT,
HON. ASAHEL PECK,      } ASSISTANT JUDGES.
HON. BENJAMIN H. STEELE,

---

### ANDREW JOHNSON *v.* J. A. & I. T. BURDEN.

*Deed. Notice. Priority of Record. Town Clerk's Certificate.*
*Evidence. Practice.*

Deeds take precedence not according to priority of record, but according to priority of filing and deposit for record in the proper office. But if a deed be withdrawn before it is in fact copied upon the book of records, its operation as notice of a conveyance is postponed until it is returned.

A.'s deed was deposited and filed on the 3d of the month, and A. withdrew it the same day before it was in fact spread upon the records, and did not return until after the 5th, on which day B.'s deed was filed. *Held*, that B.'s deed took the precedence; but if A.'s deed had been returned before the filing of B.'s, then A.'s would take the precedence, though not recorded first.

Johnson *v.* Burden et al.

The town clerk's certificate of the record of a deed is subject to impeachment by parol testimony.

When the verdict is general, the judgment must be reversed for any error which is the subject of exception, unless it appears that both the verdict and the judgment would have been the same if there had been no error.

EJECTMENT to recover possession of a piece of land in Glastenbury. Plea, the general issue, and trial by jury, December Term, 1867, PROUT, J., presiding.

The plaintiff to show title in himself, introduced in evidence several deeds, certified copies of deeds, and other evidence, tracing his title from Benjamin Whipple, an original proprietor, down through successive grantees, to one Eliab Stone. It also appeared in evidence, that Eliab Stone, in the spring of 1860, died intestate, (he then being the owner of the land in dispute, as claimed by the plaintiff,) leaving eight children then living, viz : James, Seymour, Abram, Nathan, Horace, Fayette, Arvilla and Henrietta, and also a grandchild, by a deceased daughter, Lois ; making in all nine heirs to his estate.

The plaintiff also introduced a deed from James Stone *et al.*, to Abram Stone, dated the 25th day of January, 1861, which deed was executed by James Stone, Arvilla Perkins, and her husband, Francis B. Perkins, and other heirs of the said Eliab Stone ; also a deed from Abram Stone to Horace E. Stone, dated the 23d day of October, A.D. 1862, the first of which deeds was not recorded in Glastenbury *until the 5th day of December, A.D.* 1866, but was then recorded, and the last of which deeds was so recorded December 6th, A. D. 1865 ; also a deed from Horace E. Stone to the plaintiff, dated the 18th day of April, 1863, and recorded December 3d, 1863, which three deeds last named purported to convey the demanded premises. Also evidence that the plaintiff had been ousted by the defendants, and evidence of the value of the rents and profits, and of the timber and wood taken from the demanded premises by the defendants.

The defendants, with other record evidence to show title in them, introduced in evidence, the deed of James Stone *et al.*, to the defendants, *dated the* 3d *day of December, A.D.* 1866, and executed by James Stone, Arvilla Perkins and Fayette Stone, with a certificate of record

thereon, by the town clerk, of the town of Glastenbury, dated the same 3d day of December, 1866. And also introduced the record of said deed on which was the certificate of said town clerk, that said deed was recorded on the same 3d day of December, 1866; the certificate of acknowledgment by Fayette Stone, on said deed, bore date the 5*th day of December, A.D.* 1866.

The plaintiff produced and examined the town clerk of Glastenbury as a witness, whose testimony tended to show, that after said last named deed had been left, and filed for record in his office, and before it had been recorded, the defendants took the same away from his office, and subsequently returned it with the acknowledgment of Fayette Stone thereon, dated December 5th, 1866, and that the entry on the record, that said deed was recorded December 3d, 1866, was erroneous; but his recollection in regard thereto was not very clear or definite.

It was conceded on trial, that the plaintiff held four-ninths, and the defendants one-ninth of the Eliab Stone title, and that two of the heirs of Eliab Stone had never conveyed their interest in this estate. And both plaintiff and defendants claimed the shares of James Stone and Arvilla Perkins, under their respective deeds of James Stone *et al.*, before referred to.

There was no evidence offered by the defendants tending to prove the death of the husband of the said Arvilla Perkins previous to the date of her said deed to the defendants.

There was no evidence offered tending to prove that the defendants had notice, or knew of the deed of James Stone *et al.*, to Abram Stone, prior to the conveyance of James Stone *et al.*, to the defendants, aside from the deeds, and the record of them. The court, with other matters of charge, proper and not excepted to, instructed and told the jury, that if the plaintiff, from his evidence, was entitled to recover at all, he could only recover damage in proportion to his interest in the property in dispute, and to be let into possession as tenant in common to that extent; that it appearing from the said deed of James Stone *et al.*, to the defendants, that the husband of Arvilla Perkins had not joined with her in making the conveyance, and the defendants having offered no evidence to prove his death, the

37

deed was to be taken as to her as the deed of a *feme covert*, as she could not convey during the life of her husband without him, and further instructed the jury in reference to the said deed of James Stone *et al.*, to the defendants, that it appearing to have been left for record on the 3d of December, 1866, the jury would consider the evidence of the town clerk upon the subject; that the certificates of the town clerk, and of the justice, were but *prima facie* evidence of the time when left for record, and was not conclusive ; that there was a mistake somewhere; that if the deed was taken from the town clerk's office before it had been recorded, its operation would be postponed ; that it was for the jury to settle and find from all the evidence relating thereto, which was recorded first in point of fact, and that the plaintiff, if otherwise entitled to recover, should recover the seizen and possession of five-ninths or six-ninths of the premises, as the jury should find the fact in reference to the priority in recording the deed of said James Stone *et al. ;* together with his share of the fair value of the standing timber.

Both parties claimed title to the demanded premises by adverse possession of more than fifteen years, and upon that point the cause was submitted to the jury under instructions from the court,—to which no exceptions were taken.

To so much of the charge of the court as hereinbefore set forth, the defendants excepted. The jury returned a verdict for the plaintiff to recover, &c., six-ninths of the demanded premises, and three hundred and sixty-five dollars damages.

Some other points were presented in the bill of exceptions, but are not discussed in the opinion.

*Tarrant Sibley* and *A. B. Gardner*, for the defendants.

*G. W. Harmon* and *C. N. Davenport*, for the plaintiff.

The opinion of the court was delivered by

STEELE, J. The deed through which the plaintiff claimed to have acquired the title of James Stone and Arvilla Perkins was filed for record in the town clerk's office, December 5th. 1866. The deed

under which the defendants claimed the same title from the same parties was filed for record December 3d, 1866. It thus appears by the certificate of the town clerk upon the deeds, and the fact is not disputed, that the defendants' deed was filed for record two days earlier than the plaintiff's, and the defendants, if nothing further was shown, would hold the title by virtue of this priority. This result would not be changed, by proving that the plaintiff's deed was in fact first spread upon the record. The deeds take precedence, not according to priority of record, but according to priority of filing and deposit for record in the proper office. While the deed is in the town clerk's office on file for record it is open to examination and serves all the purposes of notice as well as if recorded.

If, however, the grantee withdraws the deed from the files of the town clerk and carries it away before it is in fact copied upon the book of records, there is nothing left in the office to indicate the conveyance. When the deed is thus withdrawn its operation is postponed until it is returned. This is said by WILLIAMS, Ch. J., to have been decided in 1824, in *Bush* v. *Cook*. See *Sawyer & Rogers* v. *Adams*, 8 Vt. 176. The plaintiff claimed that on the same day when the defendants' deed was filed for record, December 3d, 1866, and before it was actually recorded, the defendants withdrew it from the files and did not return it until after December 5th, 1866, on which day the plaintiff's deed was filed. If this was so, it lost its priority and the plaintiff's deed would take the precedence. But the defendants do not admit that they withdrew the deed before record, and they offer in evidence the records of the town clerk, upon which their deed appears with a proper certificate that it was actually recorded December 3d, 1866. The court then permitted the plaintiff, against objection, to introduce parol testimony to show that this certificate was incorrect. And the question arises whether the town clerk's certificate was subject to this parol impeachment. This question was settled in *Bartlett et ux* v. *Boyd*, 34 Vt. 256. It was there held that the town clerk's certificate was not conclusive but merely *prima facie* evidence open to contradiction by parol. A different rule prevails in many of the States with regard to the certificates of recorders of deeds, but it is a matter

mainly governed in each State by special statute, and the rule must of course vary as the statutes do. We think there was no error in receiving this testimony.

Another question arises upon the instructions of the court to the jury. The plaintiff, who did recover six-ninths of the premises, would at the best have been entitled to recover no more than five-ninths if the defendants' deed took the precedence, and the plaintiff failed to make out his title by possession. The court told the jury " that if the deed was taken from the town clerk's office, before it had been recorded, its operation would be postponed." So far the charge was correct. The court then added, " that it was for the jury to settle and find from all the evidence relating thereto, which deed was recorded first, in point of fact, and that the plaintiff, if otherwise entitled to recover, should recover the seizin and possession of five-ninths or six-ninths of the premises according as the jury should find the fact in reference to priority in recording the deeds." This we think was not the true rule. If the jury found that the defendants withdrew their deed from the office before it was recorded, the question then became whether they *returned* it before the plaintiff's deed was filed for record. If they withdrew it on the 3d of December and returned it on the 4th or on the 5th before the plaintiff left his deed, it would take priority even though not recorded in fact until after the plaintiff's deed. There is no rule that requires a deed which is once withdrawn to be actually recorded before it can be made again operative as a notice. On its return it stood no worse for having been in the office before, but precisely as if it then came to the hands of the clerk for the first time. See *Sawyer & Rogers* v. *Adams, ubi supra.* The only oral testimony on the part of the plaintiff upon this subject which is stated in the exceptions, is to the effect that the deed was taken away on the third and returned " subsequently." The only written testimony on which the plaintiff relies, is the date of the certificate of Fayette Stone's acknowledgement of the deed, December 5th. Both classes of evidence are consistent with a return of the deed to the office at an earlier hour than the hour of the filing of the plaintiff's deed, and still if the jury found such was the case, they would under the charge be controlled

by the relative time of the actual recording of the two deeds. We are very much inclined to suspect that this apparent error is but a mistake in drawing the exceptions, and that the subject was properly explained to the jury, but we do not feel warranted in presuming upon such a suspicion so far as to base a decision upon it. It was urged that it should be presumed that the jury found the case for the plaintiff upon the ground of adverse possession, and as no exceptions were taken on that branch of the case, the judgment should be affirmed irrespective of any error there may be on the other branch. When the verdict is general the judgment must be reversed for any error which is the subject of exception, unless it appears that both the verdict and the judgment would have been the same if there had been no error. If the jury had found specially for the plaintiff, on the ground of adverse possession, then the exceptions on the other branch of the case would have been immaterial. We think it unnecessary to notice other points which are raised and which are not likely to become important in a new trial.

Judgment reversed and case remanded.