# Gladys S. Spaulding v. H. E. Fletcher Company

[ 205 A.2d 556 ]

June Term, 1964

Present: Holden, C. J., Shangraw, Barney, Smith and Sylvester, JJ.

Opinion Filed October 6, 1964

*Fitts and Olson* for plaintiff.

*Black and Plante* for defendant.

**Smith, J.** This is an action of tort. The plaintiff alleging to be the assignee of certain reserved rights to a granite quarry in the Town of Plymouth, seeks conpensatory and punative damages from the defendant for granite removed by it from the quarry which the plaintiff claims to be hers by virtue of the claimed assignment. Trial was had in the Windsor County Court. At the close of plaintiff's evidence, the court below granted defendant's motion for a verdict to be directed in its favor. This appeal is not only from the verdict and judgment but from the ruling of the trial court excluding from admission in evidence certain documentary exhibits offered by plaintiff in proof of title.

The granite quarry, which is the center of this controversy, is located in the Calvin Coolidge State Forest in the Town of Plymouth. The land upon which the quarry is situated is part of a right or original share in the township, granted by Benning Wentworth, the last Royal Governor of New Hampshire, for the use of the Church of England. Under the original grant, the Church was entitled to receive the rentals for this land for its support. Such lots have long been designated as "glebe land" in Vermont.

Because the rights of lessor and lessee in such glebe land are involved in the questions before us, and important in the decisions which must be made, it will be helpful for an understanding of the case to summarize them.

The American Revolution resulted in the legislative transfer of income from Church of England glebe lots to the schools of the respective towns in which such lots were located, and the withdrawal of such income from the Church. The care of such lands was placed in the hands of the respective town selectmen. 24 V.S.A. §2401. For a more complete historical background, see Bogart, The Vermont Lease Lands.

The selectmen of such town, except when the land has otherwise been disposed of according to law, are entitled to the possession of such lands. 24 V.S.A. §2402. Selectmen who are in possession of

such lands "may lease such lands as they deem beneficial, reserving rents for the same which shall be paid annually into the treasury of the town." 24 V.S.A. §2403.

Since the early days of the State, such glebe lands have been conveyed by durable leases, conveying to the lessee, his heirs and assigns, a lease of the land for "as long as grass grows and water runs" or phrases of similar durability. The consideration for such leases is an annual rental. Early in the history of these glebe lands it was held that the rights which accrued to a lessee under such leases, and which he could pass to another by assignment, could not be divested by the unilateral act of the State.

The selectmen are empowered to prosecute or defend any actions in the name of the town, necessary to recover or protect their possession. 24 V.S.A. §2402.

The glebe land with which we are here concerned was originally leased by the selectmen of Plymouth to one Timothy Wetherby in 1819. The lease was a durable one and provided for a yearly rent of twelve dollars to be paid to the town. The lease contained a provision that "if it should happen that said yearly rent of twelve dollars hereby reserved or any part thereof to be behind and unpaid for a period of sixty days next over or after the day wherein the same ought to be paid as aforesaid, the same being first lawfully demanded, that then and from thenceforth it shall and may be lawful, that the selectmen and their successors in office, to enter again upon the land and expel Wetherby and his heirs and assigns from the premises."

The parties are agreed that the glebe land in question was passed by assignment from one lessee to another over the years until one Arthur Walker became the lessee in 1925, with the exception of one small parcel of land not material to the questions presented here.

On November 17, 1925, Arthur Walker signed and acknowledged a quit-claim deed by which he transferred all his right, title and interest in the glebe lot to the State of Vermont. This deed was not recorded in the land records of the Town of Plymouth until December 22, 1925. The glebe land was then made a part of the Calvin Coolidge National Forest by the State of Vermont, and came under the jurisdiction of the Department of Forests and Parks.

On September 13, 1961, the Department of Forests and Parks of the State of Vermont leased the granite deposits on such lot for a ten-year period, with a right of renewal for an additional ten years, to the

defendant, H. E. Fletcher Company. There is no dispute but that the Fletcher Company had, since receiving such lease from the State, removed and sold quantities of granite of considerable value from the premises.

The crux of the matter before us is the offered documentary exhibits of the plaintiff which she contends would have established her superior claim of title to the granite on the glebe lot over that of the defendant. If the lower court was correct in excluding such exhibits from the evidence in the case, plaintiff admits the direction of a verdict in favor of the defendant would also have been correct.

The cornerstone of plaintiff's structure of title is her offered exhibit No. 211. This exhibit purports to be a new lease, or as plaintiff contends, a novation of the old lease, between the selectmen of Plymouth and Arthur Walker. The significant difference between the terms of the original lease under which Walker held possession of the glebe land as the assigned lessee, and the claimed novation, is the reservation by the selectmen for the town of granite rights on the glebe lot in the claimed novation.

Other exhibits, offered by the plaintiff and excluded from evidence by the lower court, viewed in the light most favorable to the plaintiff, stem from the claimed novation. One such exhibit is a lease from the selectmen of the town of the reserved granite rights on the glebe lot to William W. Stockney and John G. Sargent on December 1, 1929 on payment of an annual rent. Other excluded exhibits are various quit-claim deeds and probate decrees, which plaintiff says, would establish her present possession of the granite rights reserved by the town in the novation of the old lease with Walker, and leased by the town to Stickney and Sargent.

Returning to offered Exhibit 211, the claimed novation is dated as of October 1, 1925. It was not acknowledged, however, until November 21, 1925. It was recorded in the land records of the Town of Plymouth. Plaintiff does not dispute that the effective date of this instrument would be on the date of acknowledgment, November 21, 1925. While no evidence appears in the record before us as to the date of delivery of the quit-claim deed from Walker to the State of Vermont the deed is signed and acknowledged as of November 17, 1925. A deed is presumed to have been delivered at the date of the instrument, and this presumption is strengthened if the date of the acknowledg-

ment is the same as that of the deed. 16 Am. Jur. Deeds, §387. See 9 Wigmore, Evidence §2520 (B), at 436. It follows that the effective date of the deed from Walker to the State was prior to the effective date of the claimed instrument of novation.

Plaintiff does lay great stress, however, on the fact that the claimed novation was recorded some four days prior to the recording of the quit-claim deed from Walker to the State. Under our recording act, says the plaintiff, this prior recording of the novation over the quit-claim to the State gives a priority to the granite rights reserved in such novation, now held by her, over any rights which the State acquired by the later recorded quit-claim deed.

Although other points relative to the admissibility of the excluded exhibits have been briefed by both plaintiff and defendant, we believe that by confining our examination to the issue of whether offered exhibit 211 constituted a novation between Walker and the town will answer the question here presented.

The relationship between Arthur Walker and the Town of Plymouth as to rights in the glebe land was that of tenant and landlord. *University of Vermont* v. *Ward,* 104 Vt. 239, 254, 158 Atl. 773. As we have seen under the original lease, Walker had the right to assign his rights as lessee to the glebe lot to another. Under the lease, the town, as landlord, had the right to re-enter the premises and eject Walker, or any other other lessee, for non-payment of the annual rental. The selectmen of the town, after such repossession of the lot would then have the right to again lease it on terms beneficial to the town.

The records of the Town of Plymouth evidence that Walker was four years in arrears in the payment of his glebe land rent at the time of the purported novation. The records also show that over the years Walker had on many occasions paid rent to the town which was in arrears from two to four years at the time of payment.

The plaintiff admits that there is no evidence in the record before us that any demand was ever made by the town of Walker for back rent. Also admitted is that the record does not disclose any action, legal or otherwise, on the part of the town to remove Walker from his possession of the glebe lot at any time. Such action could have been brought by the town by virtue of 12 V.S.A. §4773.

The law requires that the lessor perform some act unequivocally manifesting the lessor's intention to claim a forfeiture and his

election to terminate a lease. Forfeiture of a lease can only result from the act of the lessor. *Hinsman* v. *Marble Savings Bank,* 104 Vt. 40, 42, 156 Atl. 874. The plaintiff asks us to assume that the acts of the selectmen in negotiating and executing a new lease with Walker was the equivalent of a re-entry and possession. But the burden of proof was upon the plaintiff to show that the selectmen had the right of possession of the glebe land, required by the statute (24 V.S.A. §2402) to allow them to lease such lands. 24 V.S.A. §2403. We cannot make such an assumption in aid of a claimed novation, for novation is never presumed. *Manley Brothers Co. Inc.* v. *Somers,* 100 Vt. 292, 297, 137 Atl. 336.

Equally cogent to plaintiff's claim of a novated lease is that Arthur Walker assigned all his interest as lessee of such glebe lot to the State of Vermont by quit-claim deed on November 19, 1925, so that on November 21, 1925, the effective date of the claimed novation between Walker and the selectmen, Walker had terminated any contractual relationship that he had with the town in the lot. One of the essentials in establishing novation is that there be a contract in existence between the parties, for which a new contract is substituted, with the consideration mutually being the discharge of the old contract. *Manley Brothers Co. Inc.* v. *Somers,* 100 Vt. 292, 297, 137, Atl. 336.

The plaintiff's assertion that the recording of the claimed novation prior to the recording of the deed from Walker to the State made the reservation of the granite rights by the town superior to the rights granted by Walker to the State, would, if material, be of no aid to her.

Our recording act is found in 27 V.S.A. §342:

"A deed of bargain and sale, a mortgage or other conveyance of land in fee simple or for term of life, or a lease for more than one year from the making thereof shall not be effectual to hold such lands against any person but the grantor and his heirs, unless the deed or other conveyance is acknowledged and recorded as provided in this chapter."

The quit-claim deed, while still unrecorded was, of course, good against Walker who was the grantor thereon. Even if not recorded an assignment operates to pass the assignor's interest to the assignee. *Sowles* v. *Butler,* 71 Vt. 271, 178, 44 Atl. 355.

The plaintiff seemingly takes the position that the novation was in the nature of a deed, by which the town received the granite

rights from Walker, but there was no conveyance from Walker to the town. It was the town that was the grantor to him, in their landlord and tenant relationship. The granite rights which plaintiff claims here were not created by deed—on the contrary they were attempted to be created by the landlord through a reservation in a new lease. The case of *Johnson* v. *Burden,* 40 Vt. 567, 94 AD 436, cited by plaintiff on the matter of the precedence of recorded deeds has no application here, where the plaintiff's claim of precedence is based upon a reservation, and not upon a deed. The Town of Plymouth was never in the position of an innocent purchaser of real estate for whom the recording statute gives protection from secret grants and liens. The provisions of 27 V.S.A. §342 were not applicable for the benefit of the town, or those claiming under it, by reason of the attempted reservation.

The plaintiff's predecessors in title, Stickney and Sargent, did not come within the protection of the recording act. Where the same grantor has made two conveyances of the same property, both of which are recorded, but the one last made was first recorded, a purchaser from the grantee in the deed junior in point of execution, but prior in recordation, is chargeable with notice of both conveyances, and must inquire whether he whose conveyance was first recorded was a purchaser in good faith and for a valuable consideration. He does not acquire a good title as against the grantee in the instrument first executed and last recorded if his grantor has notice of the prior conveyance provided said prior conveyance was on record when he purchased. *Tomasi* v. *Kelly,* 100 Vt. 318, 322, 137 Atl. 196. *Rublee* v. *Mead,* 2 Vt. 544; 45 Am. Jur. Records and Recording, §104, at 479.

The lower court was correct in excluding plaintiff's offered exhibit 211 for the reasons above given. It follows that the exclusionary ruling as to plaintiff's other exhibits, all of them stemming from exhibit 211, were also correct, as was the direction of the verdict in favor of the defendant.

*The entry is "Affirmed." Motion for Reargument denied.*